UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO WILLIAM D.,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00179 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Antonio William D. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 5; Dkt. 7). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted and Plaintiff's motion (Dkt. 5) is denied.

**BACKGROUND**

Plaintiff filed his application for SSI on January 11, 2018. (Dkt. 4 at 19, 68).[1] In his application, Plaintiff alleged disability beginning January 11, 2017. (*Id.* at 19, 197). Plaintiff's application was initially denied on April 26, 2018. (*Id.* at 19, 83-90). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore on April 2, 2020. (*Id.* at 36-57). On August 18, 2020, the ALJ issued an unfavorable decision. (*Id.* at 16-35). Plaintiff requested Appeals Council review; his request was denied on November 30, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

**LEGAL STANDARD**

**I.   District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or

medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 11, 2018, the application date. (Dkt. 4 at 21-22).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of intellectual disability, learning disability, and asthma. (*Id.* at 22). The ALJ further found that Plaintiff's medically determinable impairments of syncopal episodes, bradycardia, and appendicitis ending in an appendectomy were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 17). The ALJ particularly considered the criteria of Listings 3.03, 12.05, and 12.11 in reaching his conclusion. (*Id.* at 22-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the addition non-exertional limitations that:

> [Plaintiff] can perform [a] low stress job defined as simple routine work and making simple workplace decisions with 1-2 steps consistent with jobs having a specific vocational preparation ("SVP") of 1-2; not at a production rate pace (defined as assembly line pace); no strict production quotas; he can maintain attention and concentration for 2 hour blocks of time; can tolerate minimal changes in workplace processes and settings; he can have no concentrated exposure to fumes, odors, dust, gases and other pulmonary irritants; cannot perform a job requiring reading manuals and instructions as an essential function of the job.

(*Id.* at 25).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 29). The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry sorter, cleaner/housekeeper, and bagger. (*Id.* at 29-

30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 30).

## II.   The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that the ALJ engaged in impermissible "cherry picking" when considering Plaintiff's educational records. (Dkt. 5-1 at 1). The Court disagrees, for the reasons that follow.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). The ALJ also may not "cherry pick" evidence. *See Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162992, at *16 (W.D.N.Y. Jan.

13, 2015)). "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

Here, Plaintiff argues that the ALJ engaged in impermissible cherry picking because she did not consider "the impact of Plaintiff's structured and supportive setting" when discussing his educational records. (Dkt. 5-1 at 5). The Court disagrees. The ALJ expressly noted that Plaintiff had been in special education classes and had an individualized education plan, and discussed particular supports he needed in school, including prompting from teachers and the use of specialized teaching practices. (Dkt. 4 at 22, 26, 27). The ALJ was not required to provide a more detailed discussion of these facts. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision.").

Moreover, and as Defendant correctly points out, Plaintiff's reliance on 20 C.F.R. § 416.924a(b)(5) and its interpreting case law (*see* Dkt. 5-1 at 6) is misplaced. That regulation applies to applications for childhood disability benefits, and requires an ALJ to consider "the effects of structured or supportive settings upon a child's ability to initiate, sustain and complete activities." *Maria E. o/b/o J.M.A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1337 (WBC), 2021 WL 3861422, at *4 (W.D.N.Y. Aug. 30, 2021) (quotation omitted). However, Plaintiff was an adult at the time he filed the application at issue here, and the regulations applicable to childhood disability claims simply are not applicable. *See, e.g., Wright v. Chater*, 969 F. Supp. 143, 146 (W.D.N.Y. 1997) ("[A] different standard applies

in an evaluation of a child's eligibility for SSI. . . . [T]he ALJ's use of the adult standard here was proper.").

In this case, the ALJ properly applied the standard applicable in adult disability cases, and relied on the medical opinions of psychiatric consultative examiner Dr. Rebecca Billings and state agency reviewing psychiatric consultant Dr. S. Juriga in crafting his RFC finding. Plaintiff has not argued that the ALJ's RFC finding was inconsistent with these medical opinions, nor has he pointed to any other medical evidence of record that would have required the ALJ to assess any greater limitations. The Court accordingly finds no basis to disturb the ALJ's decision.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     December 29, 2022
           Rochester, New York